# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

IN RE: AVAULTA PELVIC SUPPORT SYSTEMS                          MDL No. 2187
PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO ALL CASES

### PRETRIAL ORDER # 7

### (Stipulated Protective Order)

**I.      Scope of Order**

Disclosure and discovery in this proceeding may involve production of confidential, proprietary, and private information for which special protection from public disclosure and from any purpose other than prosecuting this litigation would be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter their Stipulated Protective Order ("Protective Order") in this matter. Upon entry of this PTO # 7, the Protective Order will apply to all actions that are or become a part of MDL 2187.

**II.     The Order**

A.      By stipulating to this Protective Order (the "Order"), the parties have agreed to be bound by its terms and to request its entry by the presiding district or magistrate judge. This Order shall govern all cases directly filed in this district that are included in MDL 2187, as well as all cases transferred to this Court by the Judicial Panel on Multidistrict Litigation ("JPML") and any tag-along cases transferred to this Court by the JPML. It is hereby **ORDERED** as follows:

B. **DISCOVERY PHASE**

1. For purposes of this Order, the following definitions shall apply: (a) the term "document" shall have the full meaning ascribed to it by the Federal Rules of Civil Procedure ("Fed. R. Civ. P"); and (b) the term "producing party" shall be defined as any party or non-party who is required to produce or provide materials or testimony containing confidential information.

2. A producing party may designate as "**CONFIDENTIAL**" any material the producing party believes in good faith constitutes or discloses information that qualifies for protection pursuant to Fed. R. Civ. P. 26(c), specifically information that is trade secret or other confidential research, development, or commercial information, and materials that are deemed confidential under Federal Drug Administration ("FDA") regulations and Health Insurance Portability and Accountability Act ("HIPAA") statutes and/or regulations.

3. Confidential information may be further designated as "**HIGHLY CONFIDENTIAL**" if a Defendant produces materials that it believes in good faith would, if disclosed, cause substantial economic harm to the competitive position of the entity from which the information was obtained because it is **HIGHLY CONFIDENTIAL** research and development material on a new product that has not been approved or cleared by the FDA or a similar regulatory body or reflects a party's price competitiveness in the market or marketing business strategies of a party

2

concerning a current or new product. The plaintiff(s) will inform the producing party of its intent to disclose such information to any individual who is currently, or who at any time during the pendency of this litigation becomes, a consultant to a competitor of the producing party in the pelvic organ mesh business, or is a consultant to an entity actively investigating entering such business, and plaintiff(s) will follow the procedures for disclosure of such materials to such individual as provided in Paragraph II.B.8. of this Protective Order.

4.      <u>Challenges to Designations or Redacted Information</u>:  Any party may at any time challenge the redaction or the designation of information as **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL** by providing written notice of its objection to the designating party, or, in the case of a deposition, either on the record at a deposition or in writing later.  If, after a meet-and-confer process, the parties cannot reach agreement, either the designating party or challenging party may, on reasonable notice, apply for an appropriate ruling from the Court.  The disputed material shall continue to be treated as designated, or redacted, until the Court orders otherwise.  In any such application concerning a ruling on confidentiality or redacted information, the party claiming the designation of confidentiality or redaction has the burden of establishing that such confidential designation or redaction is proper.

5.      No person or party subject to this Order shall distribute, transmit, or otherwise divulge any material marked **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL**, except in accordance with this Order.

6.      <u>Use of Confidential Material Limited to this Action</u>:  Any document or other material which is marked **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL**, or the contents thereof, may be used by a party, or a party's attorney, expert witness, consultant, or other person to whom disclosure is made, only for the purpose of this action.  Nothing contained in this Order shall prevent the use of any document or the contents thereof, at any deposition taken in this action. If a party intends to use material that has been marked as **HIGHLY CONFIDENTIAL** at the deposition of an employee or former employee of a non-producing party in this litigation, then the party shall notify the producing party ten (10) days in advance of the deposition that it intends to use that category of material. If the parties cannot agree on parameters for usage of the material at the deposition, then the parties will seek the direction of the Court as to the utilization of that category of material in the deposition.

7.      <u>Access to Confidential Material</u>:  If a party or attorney wishes to disclose any document or other material which is marked **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL**, or the contents thereof, to any person actively, or retained to, work on this action (e.g., expert witness, paralegal, associate, consultant), the person making the disclosure shall do the following:

4

(a)    Provide a copy of this Order to the person to whom disclosure is made;

(b)    Inform the person to whom disclosure is made that s/he is bound by this Order;

(c)    Require the person to whom disclosure is made to sign an acknowledgment and receipt of this Order;

(d)    Instruct the person to whom disclosure is made to return or, in the alternative and with permission of the producing party, at the conclusion of the case to destroy any document or other material which is marked **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL**, including notes or memoranda made from **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL** material;

(e)    Maintain a list of persons to whom disclosure was made and the **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL** materials which were disclosed to that person;

(f)    At the conclusion of this action, gather the **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL** materials, copies thereof, and related notes and memoranda, and return them to the party or attorney who originally disclosed them, or destroy them, providing a certificate of compliance with the terms of this Protective Order; and

(g)    Only "Designated In-House Counsel" of Defendants may have access to information designated as **HIGHLY CONFIDENTIAL**

by another producing party. "Designated In-House Counsel" shall mean: (1) Brian Leddin, Brian L. Burlew, Greg A. Dadika, and Stephen J. Long for C. R. Bard, Inc.; (2) Marc Polk and Mike Lyons for Covidien, Inc.; and (3) one paralegal and/or clerical employee for each such Designated In-House Counsel to provide administrative support. Each Designated In-House Counsel shall complete and sign a copy of the Undertaking in Exhibit A, and each such completed, signed form shall be transmitted by e-mail to counsel for the other parties before disclosure of any such other party's **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL** information to the Designated In-House Counsel.

8.  Disclosure Requirements for **HIGHLY CONFIDENTIAL** information to Competitor Related Consultants: Prior to disclosure, plaintiff(s) will inform the producing party of its intent to disclose **HIGHLY CONFIDENTIAL** material to anyone who is currently, or who at any time during the pendency of this litigation becomes, a consultant to a competitor (as such individuals are defined in Paragraph II.B.3 above) in the manner set forth below:

(a)  Give at least ten (10) days notice in writing to counsel for the party who designated such information as **HIGHLY CONFIDENTIAL** of the intent to so disclose that information, although the disclosing party is not required to identify the intended recipient of such materials.

6

(b)    Within ten (10) days thereafter, counsel for the parties shall attempt to resolve any disputes between them regarding the production of the **HIGHLY CONFIDENTIAL** material to the intended individuals.

(c)    If the parties are unable to resolve any dispute regarding such production, within an additional seven (7) days, the party who designated the information in question as **HIGHLY CONFIDENTIAL** shall file a motion objecting to the proposed disclosure. In making such motion, it shall be the producing party's burden to demonstrate good cause for preventing the disclosure.

(d)    If the Court permits disclosure of the material designated as **HIGHLY CONFIDENTIAL** at issue, the information remains designated as **HIGHLY CONFIDENTIAL** and the individual receiving such information shall be bound by the requirements of Paragraph II.B.7.

9.    <u>Redaction of Confidential Material</u>: The parties recognize that certain FDA, other governmental agencies, and certain federal statutes require redaction of certain information prior to production of certain information by Defendants and that Defendants will comply with those requirements and redact such information as directed. Any party challenging information that has been redacted may do so in accordance with

Paragraph II.B.4 of this Protective Order, or otherwise in accordance with the Federal Rules of Civil Procedure.

10. <u>Use of Confidential Material at Depositions</u>:  All transcripts and exhibits shall be treated as if designated **CONFIDENTIAL** for a period of thirty (30) days after the transcript is available from the court reporter.  Counsel for any party may designate during the deposition or during the thirty day period after the transcript is available from the court reporter any portion of the transcript as **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL** by denominating by page and line, and by designating any exhibits, that are to be considered **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL** pursuant to the criteria set forth in this Order. Such designation shall be communicated to all parties. Transcript portions and exhibits designated in accordance with this paragraph shall be disclosed only in accordance with this Order.  A party may challenge the **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL** designation or portions thereof in accordance with the provisions of Paragraph II.B.4 above.

11. <u>Inadvertent Failure to Properly Designate Confidential Material</u>: Inadvertent production of any document or information without a designation of **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL**  will not be deemed to waive  a party's claim to its confidential nature or estop said party from designating said document or information as **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL**  at a later date. Disclosure of said document or information by another party prior to such

later designation shall not be deemed a violation of the provisions of this Order.

12. <u>Inadvertent Disclosure of Privileged Documents, "Clawback" Procedure</u>: Inadvertent production of documents or electronically stored information ("ESI") (collectively "Inadvertently Produced Documents") subject to work-product or attorney-client privilege, or other legal privilege protecting information from discovery, shall not constitute a waiver of the privilege, provided that the producing party shall notify the receiving party in writing as set forth herein. In the event that a party inadvertently produces documents or ESI subject to a claim of privilege, the producing party shall, within ten (10) days of the discovery of the inadvertent disclosure, notify the other party in writing of the inadvertent disclosure. The producing party may, in the notice, request a "clawback" of the inadvertently disclosed material. The party receiving such clawback notice shall immediately and diligently act to retrieve the Inadvertently Produced Documents, and all copies, including any loaded to databases, and return them to the producing party or destroy them as agreed between the parties. All notes or other work product of the receiving party reflecting the contents of such materials shall be destroyed and not used.

If the receiving party elects to file a motion as set forth below, the receiving party, subject to the requirements below, may retain possession of the Inadvertently Produced Documents as well as any notes or other work product of the receiving party reflecting the contents of such

materials pending the resolution by the Court of the motion below, but shall segregate and not use them pending resolution of the motion. If the receiving party's motion is denied, the receiving party shall promptly comply with the immediately preceding provisions of this paragraph. No use shall be made of such Inadvertently Produced Documents during depositions or at trial, nor shall they be disclosed to anyone who was not given access to them prior to the request to return or destroy them unless otherwise ordered by the Court.

The party receiving such Inadvertently Produced Documents may, after receipt of the producing party's notice of inadvertent production, move the Court to dispute the claim of privilege.

13. Pursuant to Federal Rule of Evidence ("Fed. R. Evid.") 502, there is no waiver of privilege or work product protection in this matter or any other matter in any other jurisdiction for any document clawed-back under this clause, or for the subject matter of any such document, whether the privileged document was inadvertently provided following review or as part of a "Quick Peek" production. In the event that any party receives information produced in discovery from any other party that reasonably appears to be Inadvertently Produced Documents, the receiving party shall promptly notify the producing party in writing of the apparent inadvertent production.

C.    **POST DISCOVERY PHASE**

    1.    If any party or attorney wishes to file, or use as an exhibit or as testimonial evidence at a hearing or trial, any **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL** material, such party must provide reasonable notice to the producing party of the intended use of such information.  The parties shall then attempt to resolve the matter of continued confidentiality by either (a) removing the **CONFIDENTIAL** or **HIGHLY CONFIDENTIAL** marking, (b) creating a mutually acceptable redacted version that suffices for purposes of the case, or (c) conferring about methods to avoid or limit public disclosure of such information during testimony.  If an amicable resolution proves unsuccessful, the parties may present the issue to the Court for resolution. The proponent of continued confidentiality will have the burden of persuasion that the document or material should be withheld from the public record in accordance with (a) Local Rule of Civil Procedure 26.4, (b) the Administrative Procedures for Electronic Filing in the Southern District of West Virginia § 12, and (c) controlling precedent.  *See, e.g., Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986); *Virginia Dept. of State Police v. Washington Pos*t, 386 F.3d 567, 575 (4th Cir. 2004).

    2.    <u>Survival of Protective Order</u>:  Throughout and after the conclusion of this litigation, including any appeals, the restrictions on communication and disclosure provided for herein shall continue to be binding upon the parties and all other persons to whom **CONFIDENTIAL** and **HIGHLY**

**CONFIDENTIAL** material has been communicated or disclosed pursuant to the provisions of this Order or any other order of the Court.

3. <u>Return or Destruction of Confidential Material Upon Termination of Litigation</u>: Within sixty (60) days after the final termination of this action, each party, upon request of the other party, shall either return to the producing party, or destroy, all **CONFIDENTIAL** and **HIGHLY CONFIDENTIAL** material designated by any other party (including any such material disclosed to third persons), except for any attorneys' work-product for the party returning the material, and shall provide confirmation in writing to opposing counsel if such materials are destroyed.

4. <u>Modification of this Order</u>: Nothing in this Order shall prevent any other party from seeking amendments broadening or restricting the rights of access to or the use of **CONFIDENTIAL** and/or **HIGHLY CONFIDENTIAL** material or otherwise modifying this Order; and this Order may be amended without leave of the Court by the agreement of the undersigned attorneys for the parties in the form of a Stipulation that shall be filed in this case.

The court **DIRECTS** the Clerk to file a copy of this order in 2-10-md-2187 and it shall apply to each member Avaulta-related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2-11-cv-00383. In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the

complaint.  In cases subsequently removed or transferred to this court, a copy of the most recent

pretrial order will be provided by the Clerk to counsel appearing in each new action upon

removal or transfer.  It shall be the responsibility of the parties to review and abide by all pretrial

orders previously entered by the court.  The orders may be accessed through the CM/ECF system

or the court's website at www.wvsd.uscourts.gov.

ENTER:  June 7, 2011

Joseph R. Goodwin, Chief Judge

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

IN RE: AVAULTA PELVIC SUPPORT SYSTEMS                    MDL No. 2187
PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO ALL CASES

**AGREEMENT TO BE BOUND BY PROTECTIVE ORDER**

I have read and understand the Protective Order entered in *In Re Avaulta Pelvic Support Systems Products Liability Litigation*, MDL No. 2187 (S.D. W. Va.), and I agree to be bound by its terms. Specifically, and without limitation upon such terms, I agree not to use or disclose any Confidential Information made available to me other than in accordance with this Protective Order.

I hereby agree to submit to the jurisdiction of the United States District Court for the Southern District of West Virginia for enforcement of the undertaking I have made herein.

Dated: _____            _____
                                       Signed name


                                       _____
                                       Printed name

14

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

IN RE: AVAULTA PELVIC SUPPORT SYSTEMS                    MDL No. 2187
PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO ALL CASES

### PRETRIAL ORDER # 11

**(Stipulation for the Production of Documents and**
**Electronically Stored Information Protocols)**

In order to meet their responsibilities under the Federal Rules of Civil Procedure relative to production of electronically stored information, and to address the method of production of physically stored information, the parties have stipulated to and petitioned the Court to enter the following Stipulation for the Production of Documents and Electronically Stored Information in this matter, attached as Exhibit A. Upon entry of this Order, the Court approves the protocols and same will apply to all actions that are or become a part of MDL 2187, until further order of the Court.

IT IS SO **ORDERED**.

The court **DIRECTS** the Clerk to file a copy of this order in 2-10-md-2187 and it shall apply to each member Avaulta-related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2-11-cv-00383. In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial

orders previously entered by the court.  The orders may be accessed through the CM/ECF system or the court's website at www.wvsd.uscourts.gov.

ENTER:  June 7, 2011

Joseph R. Goodwin, Chief Judge

# EXHIBIT A

## STIPULATION FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

### I.   GENERAL PROVISIONS

The parties will prepare their discovery disclosure and production documents in accordance with the agreed-upon specifications set forth below:

**A.   Prior Productions.** If there are instances where a party is asked to produce physically-stored information or electronically-stored information that was previously produced in another case, proceeding or government investigation, the producing party should make best efforts to comply with this Stipulation. If for some reason the producing party believes compliance with this Stipulation is too burdensome for the instances of previously produced documents, the parties will meet to arrive at a mutually acceptable format that provides the receiving party with a production that can be reasonably accessed and used by the receiving party.

**B.   Privilege Log.** The parties shall provide privilege logs in accordance with Fed. R. Civ. P. 26(b)(5).

### II.   PRODUCTION OF PHYSICALLY STORED INFORMATION

**A.   TIFFs.** Each hardcopy document shall be scanned as single page, Group IV compression TIFF images using a print setting of at least 300 dots per inch (DPI). Each image shall have a unique file name, which is the Bates number of the first page of the document. To the extent technically available through the use of purely automated methods, and provided that no extra costs be incurred, original document orientation shall be maintained (*i.e.,* portrait to portrait and landscape to landscape).

**B.   Metadata Fields.** With the exception of those hardcopy documents that were

2

scanned by counsel for C. R. Bard, Inc. prior to the date of entry of this Stipulation, as discussed in footnote 1 below,[1] the following information shall be produced and provided in the data load file at the same time that the TIFF images and the Optical Character Recognition (OCR) acquired text files are produced. Each metadata field shall be labeled as listed below:

    (a) Beginning Production Number (ProdBeg),

    (b) Ending Production Number (ProdEnd),

    (c) Beginning Attachment Production Number (BegAttach),

    (d) End Attachment Production Number (EndAttach),

    (e) Custodian_Source,

    (f) Confidentiality, and

    (g) Document Type.

    **C.**   **OCR Acquired Text Files.** For each hardcopy document, a single text file containing the OCR acquired text shall be provided along with the image file and metadata. The text file name shall be the same as the image file name to which it corresponds.

    **D.**   **Database Load Files/Cross-Reference Files.** Documents shall be provided with (a) a delimited metadata file (.dat or .txt) and (b) an image load file (.lfp or .opt), as detailed in Appendix 1.

    **E.**   **Bates Numbering.** All images must be assigned a Bates number that shall always: (1) be unique across the entire document production, (2) maintain a constant length (zero/0-padded) across the entire production, (3) contain no special characters or embedded

---

[1]Counsel for C.R. Bard, Inc. ("Bard") shall identify by means agreeable to the parties all hardcopy documents that Bard's counsel contends were scanned prior to the date of entry of this stipulation. The fact that Bard has or will produce hardcopy documents in accordance with Paragraph II of this Stipulation does not relieve Bard of its obligation to produce the same documents in electronic form, to the extent they exist, in accordance with Paragraph III of this Stipulation relating to Electronically-Stored Information.

spaces, and (4) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter accompanying the production.

**F.    Attachments – Parent-Child Relationships.**

With the exception of those hardcopy documents that were scanned by counsel for C. R. Bard, Inc. prior to the date of entry of this Stipulation, as discussed in footnote 1 above, the Parent-child relationships (the association between an attachment and its parent document) shall be preserved. When attachments and embedded files are combined with their parent documents, the BegAttach and EndAttach fields, listing the unique beginning and ending number for each attachment or embedded document, must be included in the data load file.

**G. Unitizing of Documents.** With the exception of those hardcopy documents that were scanned by counsel for C. R. Bard, Inc. prior to the date of entry of this Stipulation, as discussed in footnote 1 above, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records (*i.e.,* paper documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the BegAttach and EndAttach fields. The parties will make their best efforts to unitize documents correctly.

**III.    PRODUCTION OF ELECTRONICALLY STORED INFORMATION**

**A.    Culling.** The parties shall meet and confer to discuss the following in an effort to reduce the number of documents to be reviewed during the discovery process:  search term culling, file type culling, de-duplication of documents, and date restrictions.  In the event of a

4

dispute regarding the search methodology or technology, the parties shall meet and confer to discuss any methodology or technologies being employed to conduct searches for and production of ESI.

**B. System Files.** Common systems and program files need not be processed, reviewed or produced. To the extent collected, the producing party shall keep an inventory of the system files not being produced and the criteria (*e.g.,* non-human readable file, etc.) for not processing the files. In the event of a dispute regarding such matter, the parties shall meet and confer to discuss disclosure of inventory of non-produced files and criteria for non-processing of same.

**C. Email.** Email shall be collected from the producing party's email store (*e.g.,* Microsoft Exchange, Lotus Notes, etc.). Metadata and header fields shall be extracted from email messages. Email messages shall be extracted from the email store.

**D. De-duplication.** Removal of duplicate documents shall only be done on exact duplicate documents (based on MD5 or SHA-1 hash values at the document level) and may be done across custodians and sources. Near-duplicate documents shall be produced rather than removed. The custodian associated with the first copy of a document processed will be considered the "pivot" custodian for that document (the custodian who will be used as the basis for determining which other collected documents are duplicates). After each production, the producing party shall produce an "other sources" listing of all other custodians or sources who or which possessed each duplicate document. In addition, after each production, the producing party will produce a de-duplication log that contains the Bates number of the produced version of each de-duplicated document (for lookup purposes), the de-duplicated custodian or source, and the SourceFilePath metadata field for non-email, e-

documents and the "Folder" metadata field for emails.

     **E.**     **Metadata Fields and Processing.** Each of the metadata and coding fields set forth in Appendix 2 that can be extracted from a document shall be produced for that document. The parties are not obligated to populate manually any of the fields in Appendix 2 if such fields cannot be extracted from a document. The custodian shall be identified for all documents produced.

     **F.**     **Native File Productions.** To the extent that this Stipulation indicates that electronically stored information is to be produced in its native format, the parties will reserve specific Bates ranges for documents produced in native format. Any native files that are produced shall be produced with the Source File Path provided, as well as all extracted text and applicable metadata fields set forth in Appendix 2. To the extent that the receiving party requests any custom slip sheets to accompany native files that are produced, the receiving party shall pay for the programming charges for developing those custom slip sheets.

     **G.**     **TIFFs.** Single page Group IV TIFF images shall be provided using at least 300 DPI print setting. Each image shall have a unique file name, which is the Bates number of the document. Bard will make reasonable efforts to produce these TIFF image files consistent with the appearance of the documents as kept in the ordinary course of business.

     **H.**     **Microsoft "Auto" Feature and Macros.** Microsoft Word (.doc) Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document that when processed would be inaccurate for how the document was used in the ordinary course of business. If an "auto date" is identified, the producing party will make reasonable efforts to produce document branded with the words "Auto Date."

I. **Embedded Objects.** Objects embedded in Microsoft Word and RTF documents that have been embedded with the "Display as Icon" feature will be extracted as separate documents and treated like attachments to the document.

J. **Compressed Files.** Compressed file types (*e.g.,* CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

K. **Text Files.** For each document, a single text file shall be provided along with the image files and metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document was redacted, an image file, or a physical file. In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text. *See* Section II.C for OCR requirements. Under no circumstances shall the receiving party be required to rely upon a less accurate version of the text than the producing party. For example, if the producing party has access to extracted text from electronic document files, the receiving party shall receive extracted text as well, instead of OCR text generated from an image file.

L. **Spreadsheets.** Spreadsheets shall be produced as TIFF images along with the extracted text and relevant metadata identified in Appendix 2 for the entire spreadsheet. If the receiving party reasonably believes that there is need to review a specific spreadsheet in native form, the parties agree to meet and confer regarding the production of that spreadsheet in native form. Spreadsheets shall be produced so that all rows and columns are expanded and capable of being viewed within the TIFF image. If the producing party believes that the TIFF image will yield a document that is not reasonably usable, the producing party shall produce

such spreadsheet in its native format.  If the receiving party reasonably believes that there is

need to review a specific spreadsheet in native form, the parties agree to meet and confer

regarding the production of that spreadsheet in native form.

    **M.**    **Microsoft PowerPoint or slide programs.** PowerPoint presentations shall be

produced as TIFF image, which shall include all speaker notes and "hidden" slides.  Color

PowerPoint presentations shall be converted to color TIFF images if the color is meaningful—

that is, if the color is needed in order to understand the meaning of the document—and black and

white PowerPoint presentations shall be converted to black and white TIFF images, provided that

proper grayscale printing is enabled to ensure that any dark colored text is not hidden from view

by other dark objects/drawings around the text. If the receiving party reasonably believes that

there is need to review a specific PowerPoint in native form, the parties agree to meet and confer

regarding the production of that PowerPoint in native form.  If the PowerPoint or slide program

contains video or audio components, the video or audio will be produced in accordance with

Paragraph O below.

    **N.**    **Structured Data.** The parties agree to negotiate separately regarding the

production of structured database files and shared drives.

    **O.**    **Audio and Video Files.** All audio files and video files shall be produced in their

native format with the Source File Path provided. For the purposes of identifying metadata to be

collected in Appendix 2, audio and video files will be considered electronic documents.

    **P.**    **Exceptions.** The producing party shall make reasonable efforts to limit

the extent of documents that cannot be processed.

    **Q.**    **Additional ESI Production Protocols.**

        **1.**    **Database Load Files/Cross-Reference Files.** Documents shall be

provided with (a) a delimited data file (.DAT or .CSV) and (b) an image load file, as detailed in Appendix 1.

      2.      **File Size Limitation/Non-Standard Files.** The format of production of unusually large files and non-standard electronic files, large oversized documents (*e.g.,* blueprints) etc., will be discussed before production to determine the optimal production format.

      3.      **Replacements.** All files that are replaced for any reason must be annotated with an "-R" designation appended to the original Bates number. Any Replacement files that are produced shall be accompanied with an indication within the letter or correspondence accompanying the production that the production contains "Replacements."

      4.      **Clawback Procedure.** Inadvertent production of documents or ESI (collectively ("Inadvertently Produced Documents") subject to work-product immunity, the attorney-client privilege, or other legal privilege protecting information from discovery shall not constitute a waiver of the immunity or privilege, provided that the producing party shall notify the receiving party in writing as set forth herein. In the event that a party inadvertently produces documents or ESI subject to a claim of privilege, the producing party shall, within 10 days of the discovery of the inadvertent disclosure, notify the other party in writing of the inadvertent disclosure. The producing party may, in the notice, request a "clawback" of the inadvertently disclosed material. The party receiving such clawback notice shall immediately and diligently act to retrieve the Inadvertently-Produced Documents, and all copies, including any loaded to databases, and return them to the producing party or destroy them as agreed between the parties. All notes or other work product of the receiving party, reflecting the contents of such materials, shall be destroyed and not used.

If the receiving party elects to file a motion as set forth below, the receiving party, subject to the requirements below, may retain possession of the Inadvertently Produced Documents as well as any notes or other work product of the receiving party reflecting the contents of such materials pending the resolution by the Court of the motion below, but shall segregate and not use them pending resolution of the motion. If the receiving party's motion is denied, the receiving party shall promptly comply with the immediately preceding provisions of this paragraph. No use shall be made of such Inadvertently Produced Documents during depositions or at trial, nor shall they be disclosed to anyone who was not given access to them prior to the request to return or destroy them unless otherwise ordered by the Court.

The party receiving such Inadvertently Produced Documents may, after receipt of the producing party's notice of inadvertent production, move the Court to dispute the claim of privilege or immunity, but the motion shall not assert the fact or circumstances of the inadvertent production to challenge whether the material is, in fact, privileged.

Pursuant to Fed. R. of Evid. 502, there is no waiver of privilege or work product protection in this matter or any other matter in any other jurisdiction for any document clawed-back under this clause, or for the subject matter of any such document, whether the privileged document was inadvertently provided following review or as part of a "Quick Peek" production. In the event that either party receives information produced in discovery from the other party that reasonably appears to be Inadvertently Produced Documents, the receiving party shall promptly notify the producing party in writing of the apparent inadvertent production.

## IV. SUPPLEMENTAL SEARCH TERMS

A.    If words, phrases, abbreviations, terms of art, idiomatic expressions, alternate spellings (or misspellings), or particular linguistic styles which are recurrent or that are unique to

the Defendants, or which are otherwise not presently known to Plaintiffs, and such terms are reasonably calculated to lead to the discovery of information relevant to this litigation, then Plaintiffs may propose a search of the Defendants' electronically-stored information using such additional search terms. As with any Request for Production or for implementation of search methodologies, any such requests may be the subject of objection, conferring and, if necessary, direction from the Court.

B.   If in the course of discovery, additional custodians who are recurrent, or who are otherwise not presently known to Plaintiffs, or who Plaintiffs determine may possess materials reasonably calculated to lead to the discovery of relevant evidence, are identified, Plaintiffs may request the custodial files of those additional custodians. As with any Request for Production, any such requests may be the subject of objection, conferring and, if necessary, direction from the Court.

## V.   DATE SCOPE REGARDING ESI AND HARD COPY DOCUMENTS

The parties agree to negotiate separately regarding any date scope limitation regarding ESI and hard copy documents. However, it is recognized that the parties have duty and responsibility to supplement their responses to discovery as set forth in the Federal Rules of Civil Procedure.

## VI.   ARCHIVED AND BACKUP DATA

Collection and production of responsive ESI will include archived data that is reasonably accessible. If a producing party takes the position that any backup or archived data that may contain discoverable information is not "reasonably accessible" within the definition of the Federal Rules, such sources shall be identified with sufficient particularity that the requesting party may make a motion with respect thereto.

**VII.   COST OF ESI**

While each party expressly reserves its rights to seek costs relating to this litigation, including the costs of producing documents and ESI, initially each party will bear the costs to process and review its own documents and readily accessible ESI.

**VIII.   ADDITIONAL CUSTODIAN SEARCH GROUPS**

Plaintiffs have agreed with C. R. Bard, Inc. to an initial list of thirty (30) custodians to be searched as an initial search group. Upon receipt of documents produced as a result of the search of those custodians, Plaintiffs will submit the names of additional custodians for subsequent search groups. Sofradim Production and related entities have agreed to provide information regarding their organizational structure so that an initial search group of up to thirty (30) custodians for those entities can be identified. Such information shall be provided prior to the next scheduled conference with the Court on April 5, 2011.

**IX.   AGREEMENT DOES NOT WAIVE OR SUPERSEDE PARTIES' DISCOVERY RIGHTS AND/OR OBLIGATIONS UNDER THE FEDERAL RULES OF CIVIL PROCEDURE.**

This agreement is without waiver or limitation of any rights of any party to discovery under the Federal Rules of Civil Procedure. The obligations of any party to this agreement to provide discovery under the Federal Rules of Civil Procedure are not limited or superseded by this agreement.

This 7nd day of June, 2011.

Henry G. Garrard, III
BLASINGAME, BURCH, GARRARD & ASHLEY, P.C.
440 College Ave.
P.O. Box 832 Athens, GA 30603 706-354-4000
*Counsel for Plaintiffs*

Richard B. North, Jr.
NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th St., NW Suite 1700
Atlanta, GA 30363 404-322-6000
*Counsel for Defendant C. R. Bard, Inc.*


Sandra A. Bresnick, Esq.
Andrew Berdon, Esq.
Quinn Emanuel
51 Madison Avenue, 22nd Floor
New York, New York 10010
*Counsel for Defendant Covidien Inc.*

## APPENDIX 1: FILE FORMATS

Image Load Files

- Every document referenced in a production image load file shall have all corresponding images, text and data.

- Documents shall be produced in only one image load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

- The name of the image load file shall mirror the name of the delivery volume, and should have a .LFP or .OPT extension (*e.g.,* ABC001.LFP).

- The volume names shall be consecutive (*e.g.,* ABC001, ABC002, . . .).

- The load file shall contain one row per TIFF image.

- Every image in the delivery volume shall be contained in the image load file.

- The image key shall be named the same as the Bates number of the page.

- Load files shall not span across media (CDs, DVDs, hard drives, etc.). A separate volume shall be created for each piece of media delivered.

Metadata Load Files

- The metadata load file shall use the following delimiters:

  -Column delimiter: Pipe | (ASCII 124)

  -Text qualifier: Caret ^ (ASCII 94)

  -New line: Registered sign ® (ASCII 174)

- Data for documents shall be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

- The first record shall contain the field names in the order of the data set forth in Appendix 2.

- All date fields shall be produced in "mm/dd/yyy hh:mm:ss AM" format.

- A carriage-return line-feed shall be used to indicate the start of the next record.

- Load files shall not span across media (CDs, DVDs, hard drives, etc.). A separate volume shall be created for each piece of media delivered.

- The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .DAT extension (*e.g.,* ABC001.DAT).

- The volume names shall be consecutive (*e.g.,* ABC001, ABC002, . . .).

**APPENDIX 2: ESI METADATA AND CODING FIELDS**

| File Name | Field Description | Populated for (email, e-documents, e-attachments, physicals) | Sample Values |
|---|---|---|---|
| ProdBeg | Bates number for the first page of the document | All | Prefix-0000001 |
| ProdEnd | Bates number for the last page of the document | All | Prefix-0000002 |
| BegAttach | Bates number for the first document of the attachment | All | Prefix-0000003 |
| EndAttach | Bates number for the last document of the attachment | All | Prefix-0000005 |
| PgCount | Number of printed pages of the document | All | 2 |
| AttachmentCount | The total number of attachments including any attachments that were not processed and the contents of additional attached containers. A value of zero (0) should be returned for any files/documents without attachments. | All | 3 |
| Custodian_Source | Custodian name produced in format: Lastname, Firstname. Where redundant names occur, individuals should be distinguished by an initial which is kept constant throughout productions (*e.g.*, Smith, John A. and Smith, John B. A non-human name (i.e., server name or data name) or designation such as "loose files" can be used. | All | Smith, Jane; Smith, John A.; Smith, John B.; Taylor, Michael |
| Confidentiality | Indicates if the document has been designated as "Confidential" pursuant to any applicable Protective | All | Confidential |

| File Name | Field Description | Populated for (email, e-documents, e-attachments, physicals) | Sample Values |
|---|---|---|---|
| | Order | | |
| DocumentType | Descriptor for the type of document: "File" for electronic documents not attached to emails; "email" for all emails; "Attachment" for files that were attachments to emails; and "Physicals" for hard copy physical documents that have been scanned and converted to an electronic image | All | Email |
| Source File Path | The directory structure of the original file for non-emails e-documents. | Only for non-email e-documents | |
| EmailSubject | Subject line of an email. | | Text of the subject line |
| To | To extent available, all SMTP addresses of all recipients that were included on the "To" line of the email. Multiple recipients should be delimited by a semicolon. | Email | Larry.murphy@email.com |
| CC | To extent available, the email addresses of all recipients that were included on the "CC" line of the email. | Email | Sstephens44@email.com |
| BCC | To extent available, the email addresses of all recipients that were included on the "BCC" line of the email. | Email | Ceo-gs@email.com |
| Attach | The file name(s) of the documents attached to emails or e-documents. E-documents with embedded | Email, e-documents | AttachFilename1.ext |

| File Name | Field Description | Populated for (email, e-documents, e-attachments, physicals) | Sample Values |
|---|---|---|---|
| | documents such as documents contained in a .ZIP file should have the embedded document name(s) listed here. Multiple files should be delimited by a semicolon. | | |
| DocDate | The parties shall use a single date for documents.[2] | E-documents, e-attachments | mm/dd/yyyy hh:mm:ss AM |
| Title | Any value populated in the Title field of the document properties. | E-documents, e-attachments | Title |
| Subject | Any value populated in the Subject filed of the document properties. | E-documents, e-attachments | Subject |
| Author | Any value populated in the Author field of the document properties | E-documents, e-attachments | Author |
| DocExt | The file extension of the document is defined as the substring of the file name which follows but does not include the last occurrence of the dot character. | Email, e-documents, e-attachments | htm |
| Size | Size (in bytes) of the original file. | Email, e-documents, e-attachments | 1408 |

---

[2] The parties agree to provide one date field based on the following hierarchy:

Email (msg/eml):
  -If an Email is an Appointment or Schedule/Meeting, the first valid date in the following order: Start Date, End Date, Date Sent, Date Received
  -Otherwise, first valid date in the following order: Date Sent, Date Received
Email attachment or part of an archive (i.e., ZIP file)
  -The first valid date in the following order: Internal Modified, Internal Created, Parent Sent Date, Parent Received Date
  -If none of the above is available, Date Sent of closest email in set
Stand-alone File
  -The first valid date in following order: Internal Modified, Modified, Internal Created, Created
  -To the extent multiple drafts/versions of a document exist, each draft version shall be treated as a separate document for production purposes

| File Name | Field Description | Populated for (email, e-documents, e-attachments, physicals) | Sample Values |
|---|---|---|---|
| Folder | Email message directory | Email, e-attachments | Mailbox – Smith, Joe\Inbox\Client Materials\Crivella West\ |
| Importance | Priority | Email | Flag |
| Hash Value | Checksum for a file, a 128-bit value. | Email, E-documents, e-attachments | e4d909c290d0fb1ca068ff addf22cbd0 |
| Other Sources | Since Global de-duping is being used – this field will track all other custodians that had possession of this file. | Email, E-documents, e-Attachments | LastName, FirstName |
| From | The name and email address of the sender of the email | Email | Bart.Cole@email.com |